UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JESSIE C. LAURITZEN, ) | CASE NO. C07-1104-JLR |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | REPORT AND RECOMMENDATION |
| ) | RE: SOCIAL SECURITY |
| MICHAEL J. ASTRUE, ) | DISABILITY APPEAL |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ ) | |

Plaintiff Jessie C. Lauritzen proceeds through counsel in his appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court concludes that this matter should be remanded for further administrative proceedings.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1970.[1] He has a high school education. Plaintiff previously

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

01  worked as a lot worker, cashier/attendant, and dishwasher/kitchen helper. He filed applications

02  for SSI benefits on February 20, 2003 and for DI benefits on March 26, 2003, alleging disability

03  since October 11, 2001 due to major depressive disorder, cognitive disorder, post-traumatic stress

04  disorder (PTSD), and dysthemic disorder. Plaintiff's applications were denied initially and on

05  reconsideration, and he timely requested a hearing.

06  ALJ Thomas J. Gaye held a hearing on April 6, 2005, taking testimony from plaintiff and

07  vocational expert William Weiss. (AR 622-44.) ALJ Gaye issued a decision finding plaintiff not

08  disabled on May 6, 2005 (AR 17-24.)

09  Plaintiff timely appealed to the Appeals Council, which denied review (AR 5-7), making

10  the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision

11  of the Commissioner to this Court.

## JURISDICTION

13  The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

## DISCUSSION

15  The Commissioner follows a five-step sequential evaluation process for determining

16  whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

17  be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

18  engaged in substantial gainful activity since his alleged onset date. At step two, it must be

19  determined whether a claimant suffers from a severe impairment. The ALJ found severe plaintiff's

20  history of cranial fracture with intracranial injury, post-traumatic seizures controlled with

---

22  official policy on privacy adopted by the Judicial Conference of the United States.

medication, a history of multiple facial fractures post surgery, a resolved left shoulder dislocation and fracture, a history of alcohol abuse, and resolving depression controlled with medication. Step three asks whether a claimant's impairments meet or equal a listed impairment. The ALJ found that plaintiff's impairments did not meet or equal the criteria for any listed impairment.

If a claimant's impairments do not meet or equal a listing, the Commissioner must assess residual functional capacity (RFC) and determine at step four whether the claimant has demonstrated an inability to perform past relevant work. The ALJ found plaintiff unlimited in his physical RFC. Secondary to his dysthemia, the plaintiff was found able to perform at least simple, repetitive tasks and secondary to his history of seizures, plaintiff was required to adhere to basic seizure precautions, such as not working with or near hazards, heights or dangerous and moving machinery. With this RFC, the ALJ found plaintiff able to perform his past relevant work as a dishwasher/kitchen helper.

If a claimant demonstrates an inability to perform past relevant work, the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the capacity to make an adjustment to work that exists in significant levels in the national economy. Finding plaintiff not disabled at step four, the ALJ did not make a finding at step five.

Plaintiff argues that there is substantial evidence in the record supporting a finding of disability in this case. (Dkt. 10 at 1.) However, this Court's review of the ALJ's decision is limited to whether the decision is in accordance with the law and the findings supported by substantial evidence in the record as a whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

01 *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). If there is more than one rational

02 interpretation, one of which supports the ALJ's decision, the Court must uphold that decision.

03 *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

04       Plaintiff argues that the ALJ failed to give legally sufficient reasons for finding him not

05 credible, and did not give proper weight to the opinions of Dr. Craig Sawchuk, his treating

06 physician. He seeks remand for an award of benefits or, alternatively, for further administrative

07 proceedings. The Commissioner argues that the decision is supported by substantial evidence and

08 should be affirmed.

09 <center>Physicians' Opinions</center>

10       In general, more weight should be given to the opinion of a treating physician than to a

11 non-treating physician, and more weight to the opinion of an examining physician than to a non-

12 examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

13 by another physician, a treating or examining physician's opinion may be rejected only for "'clear

14 and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

15 Where contradicted, a treating or examining physician's opinion may not be rejected without

16 "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

17 *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

18       Plaintiff contends that, in finding him not disabled, the ALJ failed to adequately take into

19 account the degree to which he is limited from psychomotor slowing. Plaintiff argues that Dr.

20 Sawchuk was of the opinion that he had marked to severe psychomotor slowing, and the ALJ's

21 "complete failure" to consider this impairment was significant because the vocational expert

22 opined that he would be unable to return to employment if this were the case. (Dkt. 10 at 7.) The

01  Commissioner argues that the ALJ is responsible for resolving conflicts in the medical evidence,
02  and that the ALJ did not err in relying on those portions of Dr. Sawchuk's records that did not
03  indicate psychomotor slowing to be a marked or severe impairment.  Rather, the Commissioner
04  argues, the ALJ appropriately limited the vocational hypothetical to those mild and moderate
05  mental functional limitations set forth in Dr. Sawchuk's psychological evaluation.  (*See* AR 607.)
06         On December 6, 2004, Dr. Sawchuk completed a Psychological/Psychiatric Evaluation
07  form for the Washington State Department of Social and Health Services.  (AR 605-07.)  The form
08  required the examining doctor to list various clinical findings.  Under the category "Functional
09  Mental Disorder", the form asked the provider to "[p]lease indicate how this individual could
10  perform during a normal work day, based on objective findings and your professional opinion",
11  listing symptoms and their degree of severity.  (AR 606.)  Among other symptoms, Dr. Sawchuk
12  indicated that plaintiff had a moderate depressed mood, marked social withdrawal, marked motor
13  retardation, and that the intensity and pervasiveness of all symptoms and impairment of functioning
14  was "marked".  (*Id*.)  Under the separate category "Functional Limitations", the form asked the
15  provider to "[p]lease check the degree of limitation that diagnosed conditions impose on the
16  individual's ability to perform on a normal day to day work basis."  (AR 607.)  With regard to
17  cognitive factors, Dr. Sawchuk indicated that plaintiff had a moderate limitation on his ability to
18  understand, remember and follow complex (more than two step) instructions, moderate limitation
19  in the ability to learn new tasks, mild limitations in the ability to exercise judgment and make
20  decisions, and mild limitation in the ability to perform routine tasks. (*Id*.)  Dr. Sawchuk added:
21  "History of traumatic brain injury has caused significant problems with memory and ability to
22  multitask.  Would likely do well in a structured, lower-stress work environment.  Based on

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -5

01 behavioral observation and self-report." (*Id.*) Also, with regard to social factors, Dr. Sawchuk

02 indicated that plaintiff had moderate limitation in the ability to relate appropriately to co-workers

03 and supervisors, moderate limitation in the ability to interact appropriately in public contacts, and

04 moderate limitation in the ability to respond appropriately to and tolerate the pressure and

05 expectations of a normal work setting. (*Id.*) Dr. Sawchuk indicated mild limitations in the ability

06 to care for self and the ability to control physical or motor movements and maintain appropriate

07 behavior. (*Id.*) Dr. Sawchuk added: "Mr. Lauritzen's depression is characterized primarily by

08 psychomotor slowing. Lack of a work schedule has led to more social withdrawal." (*Id.*)

09      In a March 24, 2005 letter to plaintiff's attorney discussing the form, Dr. Sawchuk wrote:

> Over the last 12 months, Mr. Lauritzen has shown some brief episodes of improved functioning, which are characterized by increased energy, mildly improved social functioning and problem-solving abilities, and a somewhat broader range of affect. Unfortunately, these episodes are time-limited, returning to his usual presentation outlined above. His functional abilities continue to be severely compromised by two interrelated areas. First, persistent symptoms of psychomotor slowing, low energy, anhedonia, and difficulties with information processing. Second, continued absence of formal Vocational Rehabilitation services.

15 (AR 595-96.)

16      The ALJ noted Dr. Sawchuk's opinion, but concluded:

> . . . It is apparent from the medical record, including Dr. Salk shuts [sic] own treatment notes, and the claimant's testimony that Dr. Sawchuk is overstating the claimant's impairment from psychomotor slowing. Psychomotor slowing is the only psychiatric impairment related limitation noted by Dr. Sawchuk to be precluding the claimant from vocational activities. In a progress report dated January 21, 2004, Dr. Salk Notes at [sic] the claimant was focusing on improving his overall level of fitness and had began [sic] a light exercise regimen as those making change in his diet. Moreover, the claimant continued his gradual taper off his antidepressant medication and the [sic] reported "feeling better this week" despite stopping his medication. Dr. Sawchuk noted in a psychiatric evaluation that the claimant was only moderately limited in his ability to follow complex instructions and learn new tasks, as well as in

REPORT AND RECOMMENDATION
RE: SOCIAL SECURITY DISABILITY APPEAL
PAGE -6

> his ability to interact with others and tolerate stress and pressure. However, the psychiatric treatment records indicates [sic] no such severe limitations.
>
> In fact, other treating sources note that the claimant's dysthymic disorder was resolving, and his social phobia was in remission. The claimant's depressive disorder was noted to be in remission. Earlier progress reports by Dr. Sawchuk did not indicate the limitations he alleges [in] his most recent report; with a clear indication that the claimant's depressive disorder was improving with the use of medication and therapy. If the claimant['s] social phobia is in remission, he should have no limitations in interacting in dealing with others. There is simply no support in the treatment records for Dr. Sawchuk's conclusions that the claimant's resolving dysthymia causes psychomotor slowing. There's no indication that the claimant has required any further hospitalization for psychiatric disorder after his attempt to harm his girlfriend emotionally by overdosing. Most recent treatment records indicate that the claimant has not required significant ongoing therapy or the use of strong prescription medication to control the symptoms. In fact, the claimant has weaned himself off of antidepressant medication with no significant relapse. This indicate[s] that the claimant himself feels he is not severely depressed and has improved, a conclusion which is supported by his testimony concerning his significant activities of daily living which show no psychomotor limitations whatsoever. Accordingly, only partial weight can be assigned to Dr. Sawchuk's conclusion concerning the claimant's ability to work.

(AR 21; internal citations to record omitted.)

The ALJ's conclusion that there is "simply no support in the treatment records for Dr. Sawchuk's conclusions that the claimant's resolving dysthymia causes psychomotor slowing" (AR 21) lacks substantial evidence. As support for this conclusion, the ALJ cites Dr. Sawchuk's 2001 clinic note assessing the plaintiff's social phobia as "resolving" and his depressive disorder as "in remission". (AR 510-13). These clinic notes, however, are more than offset by subsequent treatment records from Dr. Sawchuk over a period of several years evidencing plaintiff's continuing problems with social withdrawal and major depressive disorder. (*See*, *e.g.*, AR 491-507, 536-603.) Dr. Sawchuk, as well as other treatment providers, consistently noted the presence of psychomotor slowing in these ongoing treatment records. (*See*, *e.g.*, AR 491, 496,

499, 550, 554, 567, 574, 588, 590, 597.)

On the other hand, the record leaves some question as to the nature of Dr. Sawchuk's opinion about plaintiff's functional limitations as a result of this psychomotor slowing. Because of this ambiguity, this is not a case where it would be appropriate to credit this physician's opinion as true.[2]  Although stating in a March 24, 2005 letter to plaintiff's attorney that plaintiff's "functional abilities continue to be <u>severely</u> compromised by . . . persistent symptoms of psychomotor slowing, low energy, anhedonia, and difficulties with information processing" (AR 595-96; emphasis added), assessment forms completed by Dr. Sawchuk rate the plaintiff's functional limitations (defined as "limitation . . . impose[d] on the individual's ability to perform on a normal day to day work basis") as mild or, at the most, moderate (AR 607). Creating further ambiguity, in completing the state agency evaluation form, Dr. Sawchuk found plaintiff's motor retardation to be a markedly severe symptom, yet he did not assign that degree of severity to plaintiff's resulting functional limitations.

Even despite this ambiguity, the lack of substantial evidence for the ALJ's failure to credit Dr. Sawchuk's opinion regarding plaintiff's psychomotor slowing might be considered harmless since the ALJ utilized Dr. Sawchuk's functional limitations in soliciting the opinion of the vocational expert as to plaintiff's ability to perform his previous work. (AR 632, 635-36.) Based

---

[2] *Compare Lester*, 81 F.3d at 830-34 ("Where the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, [the Court credits] that opinion as 'a matter of law.'"; finding that, if doctors' opinions and plaintiff's testimony were credited as true, plaintiff's condition met a listing) (quoting *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989)), *with Connett v. Barnhart*, 340 F.3d 871, 876 (9th Cir. 2003) (courts retain flexibility in applying the "'crediting as true' theory."; remanding for further determinations where there were insufficient findings as to whether plaintiff's testimony should be credited as true).

01 on those functional limitations, the vocational expert testified that plaintiff could perform the
02 dishwasher/kitchen helper job.

03 The functional limitations posited by the ALJ, however, were not complete. Although the
04 vocational expert agreed (and the Commissioner conceded at oral argument) that pace limitations
05 could affect the plaintiff's ability to perform the dishwasher job, the state agency form completed
06 by Dr. Sawchuk did not elicit this information. In contrast, the SSA form completed by the
07 consulting experts covered potential areas of mental RFC not included in the state agency form
08 and therefore not answered by Dr. Sawchuk. (*See*, *e.g.*, AR 164 ("The ability to complete a
09 normal workday and workweek without interruptions from psychologically based symptoms and
10 to perform at a consistent pace without an unreasonable number and length of rest periods.")) A
11 vocational expert's testimony based on an incomplete hypothetical lacks evidentiary value to
12 support a finding that a claimant can perform jobs in the national economy. *Matthews v. Shalala*,
13 10 F.3d 678, 681 (9th Cir. 1993) (citing *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991))

14 Where the record is ambiguous or inadequate to allow for proper evaluation of the
15 evidence, the ALJ has a duty to develop the record. *Mayes v. Massanari*, 276 F.3d 453, 459-60
16 (9th Cir. 2001). In cases of mental impairments, this duty is "especially important". *DeLorme,* 924
17 F.2d at 849.

18 On remand, the ALJ should re-contact Dr. Sawchuk to clarify his opinion as to plaintiff's
19 functional limitations (including any pace limitations) either by having Dr. Sawchuk complete a
20 "Mental Residual Functional Capacity Assessment" form or through other means. The ALJ should
21 then reconsider and re-weigh Dr. Sawchuk's opinions, citing legally sufficient reasons supported
22 by the record.

Credibility

Absent evidence of malingering, an ALJ must provide clear and convincing reasons to reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). *See also Thomas*, 278 F.3d at 958-59. In finding a social security claimant's testimony unreliable, an ALJ must render a credibility determination with sufficiently specific findings, supported by substantial evidence. "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "We require the ALJ to build an accurate and logical bridge from the evidence to her conclusions so that we may afford the claimant meaningful review of the SSA's ultimate findings." *Blakes v. Barnhart*, 331 F.3d 565, 569 (7th Cir. 2003). "In weighing a claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his testimony or between his testimony and his conduct, his daily activities, his work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997).

Plaintiff argues that the ALJ gave no specific reasons in the body of the decision that would have a bearing on his credibility, and, therefore, argues that the ALJ did not provide a legally sufficient credibility assessment. The argument, however, is unavailing, as the ALJ cited a number of grounds for finding plaintiff's allegations regarding his limitations to be "not totally credible" (AR 23):

> . . . The claimant's activities of daily living remain significant and do not support the psychomotor limitations alleged by his treating physician. The claimant plays the guitar, drives an automobile and has a driver's license and lives with his grandparents caring for himself without limitation. The claimant reports that he quit drinking in 1999 following his head injury after he fell while inebriated, and did not begin drinking

again until 2003 and has since only had a drink once a month on average. The claimant told treating sources that he was allergic to alcohol, and that he has a long history of depression which has been successfully controlled with treatment since the fourth grade. In fact, the record clearly shows the claimant has been able to successfully attend school and graduate high school as well as work with his long-standing symptoms of depression. The claimant's depression has improved to [the] point where he has voluntarily stopped his own medication, indicating that he believes his symptoms are not as severe as he alleges. There's nothing in the record to support a finding that the claimant is unable to perform at least simple repetitive tasks in a vocational setting.

(AR 22.)

Given the above, it can be said that the ALJ provided clear and convincing reasons for not finding plaintiff entirely credible. Because plaintiff fails to demonstrate reversible error in the ALJ's credibility assessment, this portion of the ALJ's decision is affirmed. However, the ALJ should re-assess plaintiff's credibility on remand if warranted after obtaining clarification of Dr. Sawchuk's opinions.

## **CONCLUSION**

For the reasons set forth above, the Commissioner's decision in this case should be reversed and remanded for further administrative proceedings.

DATED this 22nd day of January, 2008.

Mary Alice Theiler
United States Magistrate Judge